UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| IN RE:<br><br>Asanda Air II, LLC,<br><br><br><br>Debtor. | CHAPTER 11<br><br>Case No. 19-10404-whd |
| Delta Air Lines, Inc.,<br><br>          Movant,<br><br>v.<br><br>Asanda Air II, LLC,<br><br>          Respondent. | CONTESTED MATTER |

**DELTA AIR LINES, INC.'S MOTION TO DISMISS CHAPTER 11 CASE OR, IN THE
ALTERNATIVE, MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Delta Air Lines, Inc. ("Delta"), by and through counsel, hereby moves the Court (the

"Motion") for entry of an order (I) dismissing the above-captioned chapter 11 case (this "Chapter

11 Case") for cause or, in the alternative, (II) granting Delta relief from the automatic stay

provisions of 11 U.S.C. § 362(a) to pursue certain litigation pending against Asanda Air II, LLC

(the "Debtor") in the Superior Court of Fulton County, Georgia, each as set forth in greater detail

below.  In support hereof, Delta respectfully represents as follows:

**INTRODUCTION**

This Chapter 11 Case is paradigmatic of using, or abusing, the Bankruptcy Code to

frustrate legitimate creditor efforts through a bad faith filing.  The Debtor's petition and

accompanying first day filings plainly evidence that the Debtor is not a viable business and has

38128309

no viable path to reorganizing its debts.  With under $10,000 in its bank account and no other readily apparent funding source, the Debtor has no assets to reorganize and few, if any, to liquidate.  Instead, the Debtor filed this Chapter 11 Case solely to stall a pending state court declaratory judgment action in which Delta asserts it terminated pre-bankruptcy that certain *Spa Services Agreement* by and between the Debtor and Delta (as subsequently amended, the "Agreement").

Pursuant to the Agreement, Delta granted to the Debtor a license to operate spas in Delta's Sky Clubs (as defined below) within three of Delta's most critical hub airports: John F. Kennedy International Airport ("JFK"), Seattle-Tacoma International Airport ("SEA"), and Atlanta Hartsfield-Jackson International Airport ("ATL").  Delta exercised its right to terminate the Agreement for convenience as to ATL and JFK on October 19, 2018, and as to SEA on February 19, 2019.

The Debtor disputes Delta's right to terminate the Agreement for convenience and threatened to file for bankruptcy if Delta took further action with respect to its asserted termination rights.   Given the apparent dispute, Delta filed a declaratory judgment petition in state court to resolve the dispute and clarify the parties' rights under the Agreement.  Tellingly, rather than respond to the merits of the petition and motions filed by Delta in the state court action, the Debtor filed this Chapter 11 Case.  Under these facts, and as discussed more fully below, Delta's Motion to dismiss this Chapter 11 Case or, in the alternative, to lift the automatic stay, should be granted for at least two reasons.

*First*, the Chapter 11 Case should be dismissed as having been filed in bad faith.  The Debtor's petition for relief shows that a reorganization is neither in prospect nor possible.  The Debtor has recorded a net loss for the last two years, has only two unsecured, non-priority, non-

insider creditors (one of which is Delta), and has liabilities that outweigh its assets by a ratio of 2:1.  Even assuming that the Debtor has any intention of paying its debts and reorganizing, the Debtor's own financials show that it does not have the ability to pay post-petition operating costs, much less pre-petition debts.  Moreover, the Debtor's prepetition actions – and threats – bespeak an ulterior motive for seeking bankruptcy protection; that is, to delay as long as possible the resolution of what rights, if any, the Debtor has to continue operating in the Sky Clubs vis-à-vis the Agreement.

*Second*, and in the alternative to dismissal, Delta should be granted relief from the automatic stay "for cause" to pursue its claim for a declaratory judgment with respect to the Agreement and the affected Sky Clubs.  This Chapter 11 Case is merely a two-party dispute, between the Debtor and Delta, that turns entirely on issues of state contract law.  First adjudicating the state court action is necessary to determine whether the Agreement was terminated pre-bankruptcy and the Debtor's corresponding rights, if any, to continue occupying the Sky Clubs.  Given the nature of this two-party dispute concerning non-bankruptcy law, the Court should grant to Delta relief from the automatic stay to pursue its declaratory judgment claim in the Superior Court of Fulton County, which is well-suited to fully adjudicate the state law issues raised in that proceeding.

For these reasons, and as set forth more completely below, Delta respectfully submits that the Court should dismiss the Chapter 11 Case "for cause" or, in the alternative, grant to Delta relief from the automatic stay.

## <u>JURISDICTION AND VENUE</u>

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

38128309

## BACKGROUND[1]

**Delta's Sky Clubs**

3.      Delta is one of the world's leading airlines, operating thousands of flights daily and serving an extensive domestic and international network.

4.      Delta operates a "hub-and-spoke" system under which Delta offers flights from local airports (the "spokes") into certain major cities (the "hubs"), from which passengers can board international or long-distance domestic routes.   JFK, ATL, and SEA are major hub airports for Delta, with ATL being the busiest airport in the world and the seat of Delta's worldwide headquarters.

5.      The airline industry is highly competitive.   Thus, attracting and retaining customers – particularly frequent fliers in major markets like New York, Atlanta, and Seattle – is of paramount importance to Delta's business.

6.      To attract and retain high-value customers, Delta provides amenities such as the Delta Sky Club (the "Sky Club").  The Sky Club is Delta's premium airport lounge, to which a limited selection of Delta customers have access.  Delta operates over 50 Sky Club locations in major airports where Delta does business, and especially in hub airports like JFK, ATL, and SEA.  Delta invests millions of dollars annually to maintain, update, and operate its Sky Clubs, which are highly popular among its customer base.  Among other things, each Sky Club offers a members-only lounge area separated from the general airport along with refreshments (often including a full bar).

---

[1] A comprehensive review of the prepetition relationship between the Debtors and Delta is set forth in the various pleadings in the State Court Proceeding (defined below).  *See* Exhibits E, F, and H.

38128309

**The Spa Services Agreement**

7.      As part of Delta's ongoing attempts to attract and retain high-value customers through its Sky Clubs, Delta occasionally introduces extra amenities.  To that end, Delta and the Debtor entered into the Agreement, pursuant to which the Debtor would operate spas inside of certain Delta Sky Clubs.  The "Effective Date" of the Agreement is October 10, 2016.  A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

8.      The Agreement granted Debtor a license to occupy the physical space needed to operate each "Spa Location."  In return, Debtor was to pay license fees to Delta, but only after recovering certain start-up expenses as to each Spa Location.  To date, Asanda has never paid any license fees (or any other amounts, for that matter), to Delta.  *See* Verified Petition (defined below) at ¶ 29.

9.      The Agreement was intended to be a "master agreement" that would govern the Debtor's operation of spas in any number of "locations to be mutually agreed upon by the parties."  Agreement at ¶ 2, Recitals.  When the Agreement was initially executed, the Debtor agreed to build and operate "Spa Locations" within the Delta Sky Clubs at JFK and SEA.  *See* Agreement at 15.  The parties anticipated that additional "Spa Locations" would later be built at different locations subject to the terms of the Agreement.  *See* Agreement at ¶ 2, Recitals.

10.      The Agreement has an initial term of three years from the Effective Date (the "Term"), which expires on October 9, 2019.  *See* Verified Petition (defined below) at ¶ 11.  The Agreement also includes an express and mutual right to terminate the Agreement for convenience.  Specifically, Section 10.1 of the Agreement states that the "Agreement may be terminated in whole or in part without cause and for convenience upon at least ninety (90) days prior written notice by one party to the other party."  Agreement at § 10.1.

38128309

11.     Pursuant to the Agreement, the Debtor opened spas in Delta Sky Clubs at JFK and SEA, both of which are identified as "Spa Locations" in the Agreement.  After executing the Agreement, the parties agreed to add a spa in one of the Sky Clubs at ATL.  The parties did not execute an amendment to the Agreement formally adding the ATL Sky Club spa as a "Spa Location"; however, the parties jointly understood and intended for the ATL Sky Club spa to be governed by the Agreement.  Indeed, for over a year, both parties performed as though the ATL Sky Club spa was subject to the terms of the Agreement.

**Delta's Notice of Intent to Terminate for Convenience**

12.     JFK, SEA, and ATL are among Delta's most important domestic hubs and are, therefore, highly critical to Delta's overall operations.  Specifically, these hubs serve as key domestic and international gateways for Delta's customers.  ATL, for example, is Delta's largest hub and being the busiest airport in the world, sees hundreds of thousands of passengers traveling through the airport daily.

13.     Thousands of Delta customers, including some of its most valuable frequent fliers, visit the JFK, SEA, and ATL Sky Clubs (collectively, the "Subject Clubs") every day.  In fact, since entering into the Agreement, Delta has seen tremendous growth in passenger foot traffic through its Sky Clubs generally, and especially in the Subject Clubs.  This growth has placed significant pressure on Delta's Sky Club facilities everywhere, but particularly within the Subject Clubs, and created an urgent need to expand seating capacity.

14.     The Debtor's spas occupy a meaningful portion of the limited, premier space available in the Subject Clubs.  Accordingly, Delta determined that, to continue to offer its frequent fliers the highest level of customer service, and to effectively compete with other major

38128309

airlines, Delta needed to recoup the premium space currently occupied by the Debtor at the Subject Clubs.

15.    To that end, on October 19, 2018, Delta gave the Debtor notice of Delta's intent to terminate the spas within the Subject Clubs[2] for convenience, pursuant to Section 10.1 of the Agreement (such notice, the "Termination Letter").  A true and correct copy of the Termination Letter is attached hereto as **Exhibit B**.

**The Debtor Disputes Delta's Right to Terminate**

16.    Through counsel, the Debtor responded to the Termination Letter on January 11, 2019.  *See* E-Mail from Natalee Drummond-Fairley to Jonathan Ware (Jan. 11, 2019, 12:51 EST) (hereinafter, the "First Response").  In the First Response, the Debtor claimed that the Termination Letter was "defective" and that amendments to the Agreement had removed the right to terminate for convenience as to the SEA and JFK Sky Clubs.  *Id.*  In addition, the Debtor asserted that the spa within the ATL Sky Club was governed by "oral agreements" that did not include a right to terminate.  *Id.*  The First Response also represented that the Debtor was prepared to petition for bankruptcy relief "to defend its right to continue operations of its JFK spa location," despite Delta's Termination Letter.  *Id.*  A true and correct copy of the First Response is attached hereto as **Exhibit C**.

17.    On February 6, 2019, two separate law firms claiming to represent the Debtor each sent a lengthy letter to Delta regarding the Termination Letter.  *See* Letter from Edward F. Danowitz to Jonathan Ware (Feb. 6, 2019) (the "Danowitz Letter"); Letter from Natalee Drummond-Fairley to Jonathan Ware (Feb. 6, 2019) (the "Fairley Letter").  True and correct copies of the Danowitz Letter and Fairley Letter are attached hereto as **Exhibit D** and **Exhibit D-**

---

[2] The Termination Letter gave notice of Delta's intent to terminate the spas within the JFK and ATL Sky Clubs; and Delta provided notice of its intent to terminate the spa within the SEA Sky Club on February 19, 2019.  The gap in timing is not relevant here.

38128309

I, respectively. Through the Danowitz Letter, the Debtor maintained its assertions that the Termination Letter was defective, that the amendments to the Agreement removed Delta's right to terminate the Agreement as to the SEA and JFK Sky Clubs, and that the spa within the ATL Sky Club is governed by verbal agreements that do not include any right to terminate. *See generally*, Danowitz Letter.

18.    The Danowitz Letter also repeated threats that, if Delta acted to enforce its Termination Letter, the Debtor would petition for bankruptcy relief to help "Asanda maintain all three of the Airport locations with Delta into October of 2019" (the natural end of the Term).  *Id.* at 4.  Moreover, the Danowitz Letter warned that any (further) attempt by Delta to terminate the Agreement for convenience prior to the end of the Term "will be met with resistance by Asanda."  *Id.*  Similarly, the Fairley Letter included threats of litigation against Delta for its allegedly tortious conduct with regard to the Agreement.  *See* Fairley Letter at 10-17.

**Delta's Petition for Declaratory Judgment**

19.    Given the Debtor's responses to the Termination Letter, on February 15, 2019, Delta filed a *Petition for Declaratory Judgment* (the "Verified Petition") in the Superior Court of Fulton County (the "State Court"), entitled *Delta Air Lines, Inc. v. Asanda Air II, LLC* (Civil Action No. 2019CV316718) (the "State Court Proceeding").  Pursuant to the Verified Petition, Delta seeks a judicial declaration that, among other things, the Agreement governs the ATL Sky Club, Delta's right to terminate for convenience survived amendments to the Agreement, and that Delta can move forward with removing the Debtor's license to operate within the Sky Clubs. Delta's Verified Petition is limited to non-monetary declaratory relief and contains no claim for damages.  A true and correct copy of the Verified Petition is attached hereto as **Exhibit E**.

20.    The Debtor was served with the Verified Petition on February 19, 2019.  Later

that day, Delta moved to transfer the State Court Proceeding to the Business Case Division of the

State Court (the "Transfer Motion").  Shortly thereafter, Delta moved to shorten the deadline by

which the Debtor had to respond to the Transfer Motion (the "Motion to Shorten") because of the

business urgency created by the Debtor's refusal to vacate the Sky Clubs.  Specifically, every

day Delta is unable to accommodate customers in the Subject Clubs harms Delta's customer base

and brand.  A true and correct copy of the Transfer Motion and Motion to Shorten are

collectively attached hereto as **Exhibit F**.

21.    On February 27, 2019, the State Court entered an order (the "State Court Order")

granting Delta's Motion to Shorten.  Among other things, the State Court Order found that Delta

had shown "good cause to expedite the briefing schedule" on the Motion to Transfer –

specifically noting "Delta's 'urgent business need to re-purpose the Asanda spas' located in areas

of hub airports that are 'a critical component of [Delta's] business.'" State Court Order at 2

(formatting in original).  The State Court Order shortened the deadline for the Debtor to respond

to the Motion to Transfer to 12:00 PM on March 1, 2019.  A true and correct copy of the State

Court Order is attached hereto as **Exhibit G**.

22.    On February 28, 2019, Delta moved to expedite the State Court Proceeding –

again, emphasizing the daily harm and urgent need for quick resolution of the parties'

contractual dispute.  A true and correct copy of Delta's motion to expedite is attached hereto as

**Exhibit H**.

23.    Less than two (2) hours after Delta moved to expedite, the Debtor made good on

its earlier threats and elected to file a voluntary petition for relief and supporting documentation

(collectively, the "Bankruptcy Petition") under chapter 11 of title 11 of the United State Code, 11

U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>"), rather than respond to Delta's Transfer Motion, Motion to Expedite, or Verified Petition.  The Debtor also filed in the State Court a *Notice of Bankruptcy and Suggestion of Stay*, a true and correct copy of which is attached hereto as **<u>Exhibit I</u>**.

24.     The Bankruptcy Petition shows that the Debtor has no available liquid assets to operate in a Chapter 11.  Specifically, the Debtor has $310,666.87 in liabilities and $151,876.37 in assets, and the assets are comprised of a mere $8,283.37 in cash and $143,593.00 of illiquid assets.  *Compare* Bankruptcy Petition, Summary of Assets and Liabilities for Non-Individuals, Line 4 *with id.* at Schedule A/B, Lines 5, 12, 23, and 43.  $135,433.00 of the illiquid assets are alleged to be the "wholesale value" of unspecified inventory and furniture, fixtures, and equipment.  *See id.* at Lines 22 and 39.  The remaining $8,160.00 represents the alleged value of uncollected accounts receivable.  *See id.* at Line 11.

25.     In addition, the Bankruptcy Petition shows that the Debtor has not been profitable since 2016, and instead has recorded losses of $326,015 in 2017 and $35,953 in 2018.  *See* Bankruptcy Petition, Exhibit 2, "Asanda Air II LLC P&L."  Likewise, the Debtor's past financials compared with its current assets indicate that it is not a viable business.  *Compare* Bankruptcy Petition, Exhibit 2, "Asanda Air III LLC P&L" (showing annual payroll obligations in 2018 of approximately $475,000) *with id.* at Summary of Assets and Liabilities for Non-Individuals, Line 4 (showing on-hand cash of $8,283.37).  The Bankruptcy Petition further shows that the Debtor does not have any executory contracts or unexpired leases except for the licenses created by the Agreement, for which the Debtor lists a remaining term of seven months. *See generally*, Bankruptcy Petition, Schedule G.

38128309

26.    In short, the Bankruptcy Petition shows that the Debtor's assets are not only insufficient to fund ongoing operational expenses, such as employee wages and benefits, but also incapable of funding the costs of administering this Chapter 11 Case.

## RELIEF REQUESTED

27.    By this Motion, Delta seeks entry of an order:

(a)    Dismissing this Chapter 11 Case for "cause," pursuant to Bankruptcy Code section 1112(b); or, in the alternative,

(b)    Granting relief from the automatic stay for "cause" pursuant to Bankruptcy Code section 362(d)(1), so that Delta can continue to prosecute the pending State Court Proceeding and take any and all actions consistent with the State Court ruling, including removing (or causing to be removed) the Debtor from the Subject Clubs.

28.    Delta further requests a waiver of the 14-day stay under FED. R. BANKR. P. 4001(a)(3) ("Rule 4001(a)(3)"), such that any relief granted under subsection (b), above, is effective immediately upon entry of the order granting relief.

## BASIS FOR RELIEF REQUESTED

## I.    SUFFICIENT CAUSE EXISTS TO DISMISS THE CHAPTER 11 CASE PURSUANT TO BANKRUPTCY CODE SECTION 1112(b).

29.    The Bankruptcy Code provides that a court "shall convert . . . or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1). Section 1112(b)(4) designates sixteen different examples of cause; however, they are neither "exhaustive nor exclusive." *Synovus Bank v. Brooks (In re Brooks)*, 488 B.R. 483, 489 (Bankr. N.D. Ga. 2013). On the contrary, "the Eleventh Circuit Court of Appeals has long recognized that a debtor's lack of good faith constitutes cause for dismissal of a case pursuant to § 1112(b)." *In re Double W Enters.*, 240 B.R. 450, 453 (Bankr. M.D. Fla. 1999)

38128309

(citing *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir. 1984)).  *See also, e.g.*, *Pegasus Wireless Corp. v. Tsao (In re Pegasus Wireless Corp.)*, 391 F. App'x 802, 803 (11th Cir. 2010) ("We have held cause for dismissal exists when a bankruptcy petition was not filed in good faith.").

30.    Determining bad faith with respect to the filing of a petition for relief "is a question of fact and must be made on a case-by-case basis." *In re Causey*, No. 06-61237-JB, 2006 Bankr. LEXIS 1137, at *9 (Bankr. N.D. Ga. Apr. 5, 2006) *aff'd sub nom.*, No. 1:06-CV-1182-TWT, 2006 U.S. Dist. LEXIS 66552 (N.D. Ga. Aug. 31, 2006).  As a general matter, however, "a lack of good faith exists when a debtor files a petition without intending to perform the statutory obligations required by the Bankruptcy Code or when a debtor's conduct constitutes an abuse of the bankruptcy process." *In re Burroughs*, No. 14-50559-WLH, 2014 Bankr. LEXIS 1941, at *6 (Bankr. N.D. Ga. Apr. 28, 2014) (internal citations and quotations omitted).

31.    Specific factors indicating a bad faith filing include: "Whether there is no possibility of reorganization;" "Whether the debtor's income is sufficient to operate;" "Whether reorganization essentially involves the resolution of a two-party dispute;" "Whether the debtor has few or no unsecured creditors;" and "Whether the debtor filed solely to create the automatic stay." *Causey*, 2006 Bankr. LEXIS 1137, at *9-10.

32.    The Debtor's Bankruptcy Petition satisfies the factors indicative of a bad faith filing and should be dismissed pursuant to Bankruptcy Code section 1112(b).  First, the Bankruptcy Petition establishes that "the [D]ebtor's income is [in]sufficient to operate." *Id.* According to the Bankruptcy Petition, the Debtor averaged approximately $40,000 per month in payroll obligations in 2018 but has only $8,283 in cash on-hand. *Compare* Bankruptcy Petition, Exhibit 2, "Asanda Air III LLC P&L" *with id.* at Summary of Assets and Liabilities for Non-

Individuals, Line 4.  Moreover, the Debtor has accumulated significant loses during the past two years while operating at the Subject Clubs, despite having paid no license fees to Delta during that same period.  *See* Verified Petition at ¶ 29 ("To date, Asanda has paid Delta nothing for the opportunity to operate spas within Delta's Sky Clubs.  Asanda ***has not made a single payment to Delta*** under the Agreement.") (emphasis added).  In brief, the Debtor's illiquidity and lack of new funding, coupled with its outsized operating costs, suggests that the Debtor will be unable even to meet ongoing obligations and remain in Chapter 11, much less confirm a plan and exit Chapter 11 as a viable business.

33.    Second, the Debtor's "reorganization essentially involves the resolution of a two-party dispute."  *Causey*, 2006 Bankr. LEXIS 1137, at *10.  Indeed, the State Court Proceeding triggered the Bankruptcy Petition, and the Debtor's schedules do not clearly set forth any business operations beyond the Agreement with Delta.  *See generally* Bankruptcy Petition, Schedule G (listing no executory contracts or unexpired leases other than the Agreement).  This is further demonstrated by the fact that the Debtor has "few . . . unsecured creditors."  *Causey*, 2006 Bankr. LEXIS 1137, at *9.  Specifically, the Debtor has only two (2) non-priority, unsecured creditors who are not insiders of the Debtor: Delta and PayPal Business Loans.[3]  *See* Bankruptcy Petition, Schedule E/F at § 2.

34.    Together, these factors indicate that "there is no possibility of reorganization," *Causey*, 2006 Bankr. LEXIS 1137, at *9-10.  This Debtor, with minimal assets, consistently negative net income, and only two non-insider, non-priority unsecured creditors, cannot confirm

---

[3] The other two (2) non-priority, unsecured creditors both are insiders of the Debtor.  Specifically, Davines North America is an insider due to its status as a member of the Debtor (an LLC).  Bankruptcy Petition, Exhibit 3, "Income Tax Return" at 12 (listing "Davines" as a "Limited partner or other LLC member").  *Cf. Longview Aluminum, L.L.C. v. Brandt*, 431 B.R. 193, 197 (N.D. Ill. 2010) (holding that "the bankruptcy court properly concluded that by virtue of [defendant's] status as a member of the LLC, [defendant] was an 'insider' under Section 1010[*sic*](31)(B).").  Likewise, Gene Frisco is an insider because he is the manager of the Debtor.  *See* 11 U.S.C. 101(31) (listing as an insider both a "person in control" and a "managing agent").

38128309

a Chapter 11 plan.[4]  And, even if the Debtor managed to find funding for an otherwise confirmable plan, the natural expiration of the Agreement on October 9, 2019, coupled with the lack of any other business, leaves the Debtor with insufficient time to devise an alternative business plan prior to its inevitable liquidation.  *But cf.*  11 U.S.C. § 1129(a)(11) ("Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . .").

35.    Finally, the timing of the Bankruptcy Petition suggests that it was filed "solely to create the automatic stay."  *Causey*, 2006 Bankr. LEXIS 1137, at *9.  The Debtor filed the Bankruptcy Petition on the heels of a clear threat: either Delta withdraws its Termination Notice, or the Debtor will use the Bankruptcy Code to forestall termination, regardless of what the Agreement says.  *See* Danowitz Letter at 4 ("*Any attempt by Delta to limit the [T]erm, or to terminate the Agreement effective prior to October 9, 2019, will be met with resistance by Asanda. [. . .] [A]s an attorney who practices mainly in the bankruptcy courts, I believe that the filing of a Chapter 11 bankruptcy case would permit Asanda to maintain all three of the Airport locations with Delta into October of 2019 . . .*") (emphasis added).  When Delta filed the State Court Proceeding to confirm its termination of the Agreement for convenience, the Debtor commenced this Chapter 11 Case.

36.    These circumstances indicate that the Debtor filed the Bankruptcy Petition in bad faith.  Rather than seeking the protection of the Bankruptcy Code for legitimate purposes, the Debtor filed to forestall the State Court Proceeding and extend its occupancy of the Subject Clubs for as long as possible.  Together with the Debtor's lack of assets, funding, or viable

---

[4] Plan acceptance must be determined without counting insider votes; thus, Delta (or PayPal) has a "blocking" position with respect to any plan that impairs unsecured creditors.  *See* 11 U.S.C. §§ 1129(a)(10) ("If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider"); 1126(c) (requiring acceptance by "more than one-half in number" of allowed claims in a class).

38128309

business, the Debtor's dilatory behavior firmly establishes that the Chapter 11 Case should be dismissed pursuant to Bankruptcy Code section 1112(b).

## II.    IN THE ALTERNATIVE TO DISMISSAL, DELTA IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY.

37.    The Debtor's prepetition actions and the contents of the Bankruptcy Petition are more than sufficient to support a dismissal for bad faith filing; however, in the event the Court is not inclined to grant dismissal at this time, Delta respectfully seeks relief from the automatic stay.  Bankruptcy Code section 362(d)(1) provides that the Court may terminate or otherwise modify the automatic stay "for cause."  11 U.S.C. § 362(d)(1).  The Bankruptcy Code does not, however, define "cause," and, as a result, the decision to lift the automatic stay is to be determined at the Court's discretion on a case-by-case basis.  *Disciplinary Bd. v. Feingold (In re Feingold)*, 730 F.3d 1268, 1277 (11th Cir. 2013).

38.    To aid in the exercise of that discretion, courts have identified various indicators of "cause," including, as relevant here, a petition filed in bad faith and pending state court litigation.  *See In re Phx. Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988) ("An automatic stay may be terminated for 'cause' pursuant to section 362(d)(1) of the Bankruptcy Code if a petition was filed in bad faith.") *abrogated on other grounds, as set forth in In re Wells*, 227 B.R. 553, 561 (Bankr. M.D. Fla. 1998);[5] *Schuler v. Sandalwood Nursing Ctr., Inc. (In re Sandalwood Nursing Ctr., Inc.)*, No. 18-58957-PMB, 2018 Bankr. LEXIS 2526, at *11 (Bankr. N.D. Ga. Aug. 22, 2018) ("Section 362(d)(1) provides relief from such stay 'for cause,' such as pending litigation against a debtor in a non-bankruptcy forum.").  *See also Feingold*, 730 F.3d at 1277

---

[5] The Eleventh Circuit has not expressly held that the Bankruptcy Reform Act of 1994, Pub. Law No. 103-394 (1994), abrogated *Phoenix Piccadilly*; however, the (possible) abrogation is not relevant here, as it relates solely to single asset real estate cases.  *See Wells*, 227 B.R. at 561.

38128309

(listing considerations such as whether the debtor acted in bad faith; the hardships imposed on the parties; and pending state court proceedings). Delta is entitled to stay relief "for cause."

**A.      Delta Is Entitled to Stay Relief Due to the Debtor's Bad Faith Filing.**

39.      As set forth above, the content of the Bankruptcy Petition and the circumstances surrounding its filing both support a finding that it was filed in bad faith. Because this element of "cause" is the same for both Bankruptcy Code sections 1112(b) and 362(d)(1), *Double W Enters.*, 240 B.R. at 453, Delta incorporates by reference § I of this Motion and respectfully submits that it is sufficient to support relief from the automatic stay "for cause." Accordingly, the automatic stay should be terminated pursuant to Bankruptcy Code section 362(d)(1), so that Delta may continue to prosecute the State Court Proceeding and take any and all actions necessary to recover the space occupied by the Debtor within the Subject Clubs.

**B.      Delta Is Entitled to Stay Relief Due to the Pending State Court Proceeding.**

40.      In addition to the Debtor's bad faith filing, the Pending State Court Proceeding further supports Delta's request for relief from the automatic stay "for cause." When there is a pending proceeding in a non-bankruptcy forum, "courts have adopted a three-prong test for determining whether the stay should be lifted for 'cause.'" *Egwineke v. Robertson (In re Robertson)*, 244 B.R. 880, 882 (Bankr. N.D. Ga. 2000). The factors are:

> 1. whether any great prejudice to either the bankruptcy estate or the debtor will result from the prosecution of the lawsuit;
> 2. whether the hardship to the non-debtor party by continuation of the automatic stay considerably outweighs the hardship to the debtor;
> 3. whether the creditor has a probability of success on the merits of his case.

*Id.* Here, all three factors weigh in favor of lifting the stay.

41.      *First*, the prosecution of the State Court Proceeding will not result in "any great prejudice to . . . the bankruptcy estate or the debtor." *Id.* As set forth above, the State Court

Proceeding seeks only a declaratory judgment against the Debtor, not a money judgment, and, therefore, its continuation will not have any direct pecuniary impact on the Debtor or its estate. To the extent the Debtor suggests that the cost or inconvenience of defending the State Court Proceeding will prejudice the estate, that argument is unavailing. "The cost of defending litigation, by itself, has not been regarded as constituting great prejudice, precluding relief from the automatic stay." *Davis v. Day (In re Day)*, 2004 Bankr. LEXIS 1521, at *5 (Bankr. S.D. Ga. Jan. 28, 2004) (internal quotations omitted) (citing several cases in support). *See also, e.g.*, *In re Walker*, 927 F.2d 1138, 1143 (10th Cir. 1991) ("No case has found the cost of defending, by itself, to be 'great prejudice' as to bar modification of the [section 362] stay.") (formatting in original) (internal citations and quotations omitted).

42.     Moreover, the dispute regarding the Agreement and underlying licenses was put at issue by the Debtor in its various responses to Delta's Termination Letter. "Great prejudice" can hardly result from Debtor's participation in litigation that merely seeks to resolve a dispute the Debtor created, and which seeks no money damages. *Compare In re Dallas*, No. 10-12141, 2011 Bankr. LEXIS 4777, at *4 (Bankr. S.D. Ga. Nov. 29, 2011) (finding "no great prejudice" when the creditor-movant sought stay relief to continue a declaratory judgment action) *with World Bazaar Franchise Corp. v. Benbo of Ga., Inc.* (In re Benbo of Ga., Inc.), No. 91-10931, 1992 Bankr. LEXIS 2612, at *7 (Bankr. S.D. Ga. Mar. 2, 1992) ("[g]reat prejudice results if the debtor/bankrupt is held personally liable, for purposes of collection, for a civil damage award.") (formatting in original) (internal citations and quotations omitted). Until the parties' dispute is fully adjudicated, the Debtor's ability to continue operating at the Subject Clubs is in question, as is the Debtor's ability to continue funding the Chapter 11 Case and successfully reorganize.

38128309

43.     *Second*, "the hardship to [Delta] by continuation of the automatic stay considerably outweighs the hardship to the [D]ebtor." *Robertson*, 244 B.R. at 882.  Each day that the Debtor's delay tactics prevent Delta from repurposing the spa space within the Subject Clubs, Delta must turn away travelers or limit access to three of its most critical Sky Clubs.  This causes irreparable harm to Delta's customer base and its brand, a fact not lost on the State Court.  *See* State Court Order at 2 (noting Delta's "urgent business need").  Yet, while the harm to Delta is significant, the Debtor gains only a delay of the inevitable: **the Term, unless earlier terminated, expires on October 9, 2019**.  *See* Danowitz Letter at 4 ("Asanda . . . intends to continue performing at least through the term of the Agreement . . . through October 9, 2019."). *See also* Bankruptcy Petition, Schedule G (listing Term as "7 months").  More to the point, the State Court Proceeding must be decided to determine whether the Debtor has any contractual right to continue lawfully occupying the Subject Clubs.  If the State Court finds that Delta's Termination Notice was effective, the Debtor's (terminated) license to operate within the Subject Clubs would not be estate property and the Debtor would have no possessory interest in the Subject Clubs.  *See* 11 U.S.C. § 541(b)(2).

44.     Further, the State Court Proceeding essentially is a state law contract dispute; it does not incorporate or require any bankruptcy expertise.  *See, e.g.*, Exhibits E, F, and H.  It would be both a waste of judicial resources and prejudicial to Delta to require litigation of these state law issues in this Court.  *See, e.g.*, *Davis v. Day (In re Day)*, 2004 Bankr. LEXIS 1521, at *8 (Bankr. S.D. Ga. Jan. 28, 2004) ("Here, allowing Movants to proceed in State Court will undoubtedly effectuate judicial economy as the State Court is better equipped . . .").  On the other hand, it is difficult to see how lifting the automatic stay and permitting the State Court Proceeding to go forward in its original forum would prejudice the Debtor at all, particularly here

38128309

where the Debtor has placed the contractual dispute front and center through its responses to Delta's Termination Letter.  Thus, the State Court Proceeding is a creature of the Debtor's own making.  Accordingly, the second factor weighs in favor of lifting the stay.

45.     *Third*, Delta has a "probability of success on the merits of [its] case." *Robertson*, 244 B.R. at 882.  As set forth in Delta's Verified Petition and briefs in the State Court Proceeding (all of which are attached hereto), Delta believes that the facts and circumstances surrounding the Agreement and the Termination Notice support its position that the Agreement applies to all three of the Subject Clubs, and that the right to terminate the Agreement for convenience survived the parties' two written amendments.  Moreover, as a practical matter, it is telling that the Debtor elected to file its Bankruptcy Petition, rather than respond to Delta's Verified Petition, Transfer Motion, or Motion to Expedite the State Court Proceeding.  In any event, Delta "has set forth a cause of action which offers some prospect of recovery," *Benbo of Ga., Inc.*, 1992 Bankr. LEXIS 2612, at *10, and that is sufficient to meet the third factor.  *See id.*  Thus, the third and final factor weighs in favor of lifting the stay.

46.     Given that all three factors weigh in favor of Delta, the automatic stay should be terminated "for cause" pursuant to Bankruptcy Code section 362(d)(1), such that Delta can (a) litigate to a judgment the State Court Proceeding (including any related appeals and actions) and (b) take any and all further actions necessary to recover the space within the Subject Clubs currently occupied by the Debtor.

## III.    IF APPLICABLE, THE 14-DAY STAY SHOULD BE WAIVED

47.     To the extent the Court decides that relief from the automatic stay is more appropriate than dismissal, Delta further requests a waiver of the 14-day stay under Rule 4001(a)(3).  Pursuant to Rule 4001(a)(3), "[a]n order granting a motion for relief from an automatic stay . . . is stayed until the expiration of 14 days after the entry of the order, unless the

38128309

court orders otherwise." FED. R. BANKR. P. 4001(a)(3).  Rule 4001 does not provide the grounds

for a waiver of stay; thus, granting a waiver is within the Court's discretion.  *See, e.g.*, *In re*

*Taub*, 438 B.R. 39, 51 (Bankr. E.D.N.Y. 2010) (waiving the 14-day stay and noting, "[d]elay and

expense, and the prospect of irreparable damage, are far more likely to result if the effective date

of this Court's Order is stayed than if it is immediately effective.").  As set forth above, each

passing day in which the Debtor refuses to vacate the Subject Clubs causes severe harm to Delta.

Delta, therefore, respectfully submits that a waiver of the 14-day stay (if applicable) is warranted

under the circumstances.

<u>**CONCLUSION**</u>

WHEREFORE, Delta respectfully requests entry of an order:

(I) Dismissing the Chapter 11 Case "for cause," pursuant to 11 U.S.C. § 1112(b); or, in

the alternative,

(II) Granting to Delta (A) relief from the automatic stay "for cause," pursuant to 11

U.S.C. § 362(d)(1), such that Delta can (i) litigate to a judgment the State Court Proceeding and

(ii) take any and all further actions consistent with the State Court ruling to recover the space

within the Subject Clubs currently occupied by the Debtor, including, but not limited to, (a)

pursuing any contractual or state law means to recover the space within the Subject Clubs (*e.g.*, a

dispossessory action), and (b) removing the Debtor (and all its property) from the Subject Clubs;

and (B) a waiver of the 14-day stay pursuant to Rule 4001(a)(3); and

(III) Granting to Delta such other and further relief as is just and proper.

[*Signature on following page*]

38128309

Dated:          March 8, 2019                    By: /s/ *Matthew R. Brooks*
                                                 Matthew R. Brooks, Bar No. 378018
                                                 Harris B. Winsberg, Bar No. 770892
                                                 Matthew G. Roberts, Bar No. 367914
                                                 TROUTMAN SANDERS LLP
                                                 Bank of America Plaza
                                                 600 Peachtree Street NE
                                                 Suite 3000
                                                 Atlanta, GA  30308-2216
                                                 Telephone:   404.885.3000
                                                 Facsimile:    404.885.3900

                                                 *Attorneys for Movant*
                                                 *Delta Air Lines, Inc.*

38128309