

**IT IS ORDERED as set forth below:**

**Date:  April 24, 2019**

_____

**W. Homer Drake**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | | |
|---|---|---|
| **IN THE MATTER OF:** | : | **CASE NUMBER** |
| | : | |
| Asanda Air II LLC, | : | 19-10404-WHD |
| | : | |
| | : | IN PROCEEDINGS UNDER |
| | : | CHAPTER 11 OF THE |
| DEBTOR. | : | BANKRUPTCY CODE |

## O R D E R

Before the Court is the Motion to Dismiss or, in the Alternative, Motion for

Relief from the Automatic Stay (hereinafter the "Motion"), (Doc. No. 20), filed by

Delta Air Lines, Inc. (hereinafter "Delta") in the above-styled bankruptcy

proceeding.   Asanda Air II LLC (hereinafter the "Debtor") opposes Delta's motion.

This matter constitutes a core proceeding over which this Court has subject

jurisdiction.   *See* 28 U.S.C. §§ 157(b)(2); § 1334.   Hearing on the motion occurred on April 3, 2019, (hereinafter the "Initial Hearing"), and continued to April 16, 2019, (hereinafter the "Final Hearing"), during which counsel for both the Debtor and Delta presented arguments and evidence.   This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).   For the reasons set forth below, Delta's Motion to Dismiss is granted.

## Background

Delta is one of the world's leading airlines, with operations in a vast number of airports throughout the world.   To attract and retain high-value customers, Delta provides many different amenities – one of which is the Delta Sky Club.   The Delta Sky Club is a premium airport lounge, available to only a limited selection of Delta customers, that offers a members-only lounge area, along with various amenities. Relevant to this case are the Delta Sky Clubs in John F. Kennedy International Airport (hereinafter "JFK"), located in New York, New York; Seattle-Tacoma International Airport (hereinafter "SEA"), located in Seattle, Washington; and Atlanta Hartsfield-Jackson International Airport (hereinafter "ATL"), located in Atlanta, Georgia.

The Debtor is an LLC that was organized under the laws of the state of New

York in September of 2016, and continued as such until January 3, 2019, at which time it became an LLC organized under the laws of the State of Georgia.   The Debtor's General Manager is Gene Frisco (hereinafter "Mr. Frisco").   The Debtor is controlled by Concept Heaven Inc. (hereinafter "Concept Heaven"), a Delaware corporation that owns 70.74% of the outstanding interests of the Debtor.   Mr. Frisco's adult children each indirectly own 45% of the shares of Concept Heaven. Concept Heaven also owns 40% of the outstanding shares of an entity named RelateLOOP LLC (hereinafter "RelateLOOP").

The Debtor provides spa services and related retail offerings within the three (3) aforementioned Sky Clubs: JFK, SEA, and ATL (hereinafter "The Sky Clubs"). On October 10, 2016, the Debtor and Delta entered into a Spa Services Agreement (hereinafter the "Agreement"), through which the Debtor would operate spas and sell beauty products within The Sky Clubs.   The Agreement, *inter alia*, grants the Debtor a license to occupy certain space within The Sky Clubs in which to operate its spa business and sell related products.   The Agreement also grants the Debtor a nonexclusive royalty-free license for use of certain Delta trademarks.   This limited license is non-assignable without Delta's prior written consent.   The Agreement contractually expires on October 9, 2019.   However, the Agreement not only

includes a mutual right of termination for convenience, but also includes an *ipso facto* termination clause that may be exercised by Delta upon the occurrence of an event of default – including filing a petition for relief under the Bankruptcy Code.

The Debtor has no other operations or locations outside of The Sky Clubs. All the Debtor's income is derived from and produced through the Agreement and The Sky Clubs, the majority of which comes from patrons use of Delta Sky Miles as payment, rather than relying on other payment methods.   As of the date of this Order, the Debtor has not paid any rent to Delta pursuant to the Agreement.

On November 8, 2019, Delta hand delivered a termination notice dated October 19, 2018 to Mr. Frisco terminating the Agreement, citing the growth of foot traffic in The Sky Clubs and the need to expand the seating capacity therein.   The termination notice states Delta's intent to terminate the Agreement as to JFK and ATL.   On February 19, 2019, the Debtor received notice of Delta's intent to terminate the Agreement as to SEA.

The Debtor, through its several responses to Delta's termination notice, asserted that the notice itself was defective and threatened Delta with litigation for alleged tortious conduct.   Significantly, the Debtor's responses also included threats to file bankruptcy in order to insure its ability to continue operations within The Sky

Clubs until the contracted termination date.

On February 19, 2019, Delta filed a Petition for Declaratory Judgment in the Superior Court of Fulton County (hereinafter the "State Court Proceeding"). Through this proceeding, Delta sought a judicial declaration that, *inter alia*, the termination notice was effective. Thereafter, Delta moved to transfer the State Court Proceeding to the Business Case Division of Fulton County Superior Court, and later moved to expedite the proceedings, due to the ongoing harm to its brand resulting from its inability to repurpose the space currently occupied by the Debtor. The deadline to respond to Delta's petition was March 1, 2019.

On February 28, 2019, the Debtor filed the instant request for relief under Chapter 11 of the Bankruptcy Code, staying the State Court Proceeding. The Debtor's Petition and Statement of Financial Affairs (hereinafter the "SOFA") contained the following information relevant to the Motion before the Court:

1. The address of the Debtor's principal place of business is 503 Las Brasis Ct., Peachtree City, Ga (hereinafter the "PTC Address").

2. Other than the Agreement, the Debtor is not a party to any executory contracts or unexpired leases.

3. Concept Heaven is the only insider to receive payment in the year

preceding the petition date.

Along with the Petition and SOFA, the Debtor filed a Motion for Permission to Pay Pre-Petition Priority Wages, Salaries or Commissions (hereinafter the "Wage Motion").   (Doc. 7).   The Debtor sought to pay $49,177.25 in pre- and post-petition wages owed to its employees.   This motion requested permission to pay individual employees only, and did not mention payment to any entities.   On March 13, 2019, the Court entered an order (hereinafter the "Wage Order") granting the request.

On March 8, 2019, Delta filed the Motion seeking to dismiss the Debtor's case, or, alternatively, relief from the automatic stay.   (Doc. 20).   On March 13, 2019, Delta filed an *ex parte* motion for 2004 examination of the Debtor, (Doc. 26), and, on March 19, 2019, the Court entered an Order (hereinafter the "2004 Order") granting the 2004 examination, (Doc. 29).   The 2004 Order directs the Debtor to, among other things, comply with twelve (12) enumerated document requests by no later than March 28, 2019.   On March 21, 2019, the Debtor filed a motion to amend the 2004 Order, stating that it believed it could "substantially comply" with the documents request, but that it would be unable to produce all of the requested documentation in the time provided.   (Doc. 30).   The Debtor maintained that many of the requested documents were in possession of third parties, and collecting such

documents would take considerable time.

On April 3, 2019, Delta's Motion came before the Court for the Initial Hearing.  At the start of the hearing, Delta raised several concerns with the Court. First, Delta maintained that the Debtor had failed to substantially comply with the 2004 Order, specifically pointing to, among other things, a large number of emails, around 7,000, that fell within the scope of the 2004 Order that the Debtor had failed to produce.

Second, Delta submitted that the Debtor's Petition and SOFA were misleading or incomplete in several regards, such as: (1) the PTC Address listed as the Debtor's principal place of business in the Petition was actually the residential address of Ms. Connors, a former employee of the Debtor, and, that the Debtor was not authorized to use the PTC Address in connection with the Bankruptcy filing; (2) despite representing to the contrary, the Debtor was actually a party to at least two additional executory contracts or unexpired leases, neither of which were disclosed; and (3) the Debtor made undisclosed pre- and post-petition transfers to RelateLOOP.

Finally, Delta contended that the representations made in the Wage Motion were misleading due to the fact that the Debtor paid RelateLOOP, who then forwarded that payment to the individuals designated to receive the wages.  Delta

7

points out that the Wage Motion made no mention of payment being made to any entity whatsoever, as the corresponding Wage Order granted permission to make wage payments only to the <u>individuals</u> named in the Wage Motion.

At the conclusion of the Initial Hearing, the Court provided the Debtor with additional time to comply with the 2004 Order, and directed that the deposition of Mr. Frisco be held on April 5, 2019.   The Court cautioned the Debtor that failure to comply with the 2004 Order would result in adverse consequences, and that continuance of the case in this Court required complete disclosure and total transparency.

On April 16, 2019, Delta's Motion came before the Court for a Final Hearing.

## Findings of Fact and Conclusions of Law

Delta seeks dismissal of the Chapter 11 case.   In support of this request, Delta presents the following arguments: (1) the Debtor filed its Petition in bad faith and solely to delay the State Court Proceeding; (2) the Debtor has failed to comply with the 2004 Order; (3) the Debtor improperly manufactured venue in this Court; and (4) § 365(c)(1) and (e)(2) prohibit Debtor's assumption of and permit Delta's termination of the Agreement.

In response, the Debtor asserts that: (1) the Petition was not filed in bad faith;

(2) the Debtor substantially complied with the 2004 Order; (3) venue is proper with this Court because the "nerve center" is located in Atlanta, Georgia; and (4) the Agreement's severability clause permits the Debtor to perform the Agreement and renders § 365 inapplicable to the Agreement.

1.  Dismissal Pursuant to § 1112(b)

Section 1112(b)(1)[1] of the Bankruptcy Code provides that a court "convert… or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause."   However, a court should not convert or dismiss a Chapter 11 case, despite finding cause, if it finds and specifically identifies (1) "unusual circumstances" establishing that conversion or dismissal is not necessarily in the best interest of creditors and the estate, and (2) the Debtor or another party in interest establishes the following:

> (A) there is a reasonable likelihood that a plan will be confirmed within the time frames established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than [substantial or continuing loss to or diminution of the estate and the absence of reasonable likelihood of

---

[1] All further references to statutory sections herein are references to the Bankruptcy Code unless otherwise indicated.

9

rehabilitation]—

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court.

§ 1112(b)(2).   Together, these sections delineate the burdens of proof placed upon both the moving party and the debtor.   *In re Roan Valley, LLC*, 2009 Bankr. LEXIS 4246, at *3-4 (Bankr. N.D. Ga. Nov. 25, 2009).   The movant must first establish "cause" to dismiss or convert a case.   *See* § 1112(b)(1).   If the movant establishes cause, then the burden shifts to the debtor, who must then show "unusual circumstances" that justify the case continuing in Chapter 11, and show the existence of the three elements enumerated by § 1112(b)(2).   *See* § 1112(b)(2). Finally, if the debtor meets this burden, the movant must then show unusual circumstances that justify dismissal or conversion of the case, despite the debtor's proffer of evidence.   *See id.*; *In re Roan Valley, LLC*, at *5.

As the burdens of proof dictate, the Court must first determine whether Delta has shown sufficient cause justifying dismissal of the Debtor's Bankruptcy case. Delta must meet this burden by a preponderance of the evidence.   *In re Bal Harbour Club, Inc.,* 316 F.3d 1192, 1195 (11th Cir. 2003).

A.   Cause for Dismissal Exists Under § 1112(b)(4)(E)

Section 1112(b)(4)(E) specifically provides that "failure to comply with an

order of the court" constitutes cause for dismissal.    11 U.S.C. § 1112(b)(4)(E).    It

is not necessary that such failure be willful or the product of bad faith.    *In re*

*Babayoff*, 445 B.R. 64, 80 (Bankr. E.D.N.Y. 2011).

Here, the Debtor has failed to comply with the 2004 Order.   The Debtor's

production of materials required by the 2004 Order has been unnecessarily

delayed, evidencing an intent on the part of the Debtor to delay this case.   The

Debtor's failure to provide the requested emails and correspondence to Delta

constitutes evidence of this fact.   The Debtor maintains that to collect such a

voluminous number of documents takes time, and that the Debtor is complying to

the best of its ability.

However, the Court is not convinced that this is the case, since the Debtor's

own email correspondence indicates otherwise.   An email, sent on December 9,

2018, from Mr. Frisco to a Mr. Claude, a Delta employee, states: "I expect our

attorneys are going to wind up speaking to each other soon.   Mine have taken

some time to get up to speed (there were over 7,000 emails and hundreds of

11

documents to read) but I think they have an understanding of our situation."[2]   It is clear to this Court that the Debtor, and Mr. Frisco, had collected a vast amount of documents and emails in preparation for litigation with Delta long before the filing of this case and issuance of the 2004 Order.   As a result, there is no merit to the Debtor's argument that it will take time to compile the required documents because the documents have already been compiled in some form or another for review by Debtor's counsel.   Consequently, there is no justification for the Debtor's failure to substantially comply with the 2004 Order.

Additionally, the Debtor's laissez-faire attitude as to the timeliness of its production of the required documents, and, thus compliance with the 2004 Order, appears to this Court as nothing more than an attempt by the Debtor and its officers to delay its possible removal from The Sky Clubs.   Since the filing of the 2004 Motion and the final hearing, the Debtor has been provided a month in which to substantially comply; however, the Debtor continues its' piecemeal turnover of documents as "they become available."

Further, at the Initial Hearing, the Debtor, in response to the Court's inquiry regarding its failure to comply with the 2004 Order, admitted that it had not

---

2 (Dep. of Gene Frisco, Ex. 25)

complied with the 2004 Order, but that documents were being produced <u>that</u> day.
It appears, however, that documents were, in fact, not produced that day, but were
produced almost twenty-four hours later, after repeated requests from Delta's
counsel.   This unnecessary delay further supports the Court's finding as to the
Debtor's intent to delay this proceeding.

Consequently, the Court finds that cause for dismissal exists pursuant to §
1112(b)(4)(E).

### B.   Cause for Dismissal Exists Due to the Debtor's Bad Faith

"[T]he Eleventh Circuit Court of Appeals has long recognized that a debtor's
lack of good faith constitutes cause for dismissal pursuant to § 1112(b)(1)."   *In re
Double W Enters.,* 240 B.R. 450, 453 (Bankr. M.D. Fla. 1999).   A determination
of bad faith is a question of fact and must be made on a case-by-case basis.   *In re
Causey,* No. 06-61237-JB, 2006 Bankr. LEXIS 1137, at *9 (Bankr. N.D. Ga. Apr.
5, 2006).   When determining bad faith, courts have considered numerous factors,
including: whether the debtor has few or no unsecured creditors; whether there was
no pressure from non-moving creditors; whether the reorganization essentially
involves the resolution of a two party dispute; and whether the debtor filed the
petition solely for the creation of the automatic stay.   *Id.* at *9-10.

13

"[C]ourts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'"   *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393, 1394 (11th Cir. 1988) (citing *In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir. 1984)).

Here, the Court finds several indicia of bad faith.   First, the Debtor has few unsecured creditors.   The Debtor's Petition sets forth five (5) non-priority, non-insider unsecured creditors, one of which being Delta.   However, three (3) of these creditors are actually "insiders": Davines North America and Anthony Cassar are members of the Debtor,[3] and Mr. Frisco is the managing director.[4]   As a result, the Debtor only has two unsecured creditors: Delta and Paypal.   As of the Petition date, the Debtor is current on its obligations to Paypal, and Delta is the only creditor with which the Debtor has any dispute.

Second, this reorganization essentially involves the resolution of a two-party

---

3 *See Longview Aluminum, L.L.C. v. Brandt,* 431 B.R. 193, 197 (N.D. Ill. 2010) (holding that "the bankruptcy court properly concluded that by virtue of [defendant's] status as a member of the LLC, [defendant] was an 'insider' under Section 1010[sic](31)(B).").
4 *See* 11 U.S.C. § 101(31)(E) ("The term 'insider' includes . . . [the] managing agent of the debtor.").

14

dispute.   Aside from the Debtor's business concept, the Agreement is the only real asset of the Debtor, and it is responsible for all the Debtor's income. Additionally, Delta is the only party taking action in this case.   In fact, Delta is the only significant creditor of the Debtor to file a notice of appearance in this case.[5] The case in its entirety depends on the resolution of the dispute between Delta and the Debtor, as the Debtor's "financial problems" stem solely from the State Court Proceeding and the underlying contract dispute with Delta.

Third, the timing of the events in this case supports the conclusion that the Debtor filed its petition to create the automatic stay against Delta.   The Debtor, in response to Delta's termination notice, alluded to the filing of bankruptcy as a way to provide itself more time within The Sky Clubs space, following through with its threat of filing a petition in this Court one day before the deadline to respond to Delta's petition in the State Court Proceeding, resulting in the stalling of the State Court case.   The Debtor presents no evidence that any other creditor acted, or even threatened action, which might justify the need for the automatic stay.   Further, there have been no actions taken by any other creditor against the Debtor at this time.   As a result, the Court finds that the Debtor's actions indicate an intent to

---

5 The only other notice of appearance filed is A Limited Notice of Appearance, (Doc. 59), filed by counsel for Robin Connors, the former employee who resides at the PTC Address.

hinder and delay the legitimate efforts of Delta to enforce what it believes to be its
rights pursuant to the Agreement.

Fourth, the Debtor's failure to make several material disclosures evidences
bad faith.   The "easiest way to fail the good faith test . . . is for a debtor to
misrepresent, lie, or otherwise mislead the court." *In re Thomas*, 443 B.R. 213, 218
(Bankr. N.D. Ga. 2010).   To reap the benefit of Chapter 11, a debtor must pay the
price of complete disclosure.   *In re Babayoff*, 445 B.R. 64, 80 (Bankr. E.D.N.Y.
2011).   Here, the Debtor failed to disclose two additional leases or executory
contracts to which the Debtor is a party: the *John F. Kennedy Airport Terminal 4
Third Party Handling Agreement* dated as of October 1, 2016, by and between JFK
International Air Terminal LLC and the Debtor; and the *Conditional Consent to
Expand Use of Concourse A/B Lounge Premises* dated November 30, 2018, by and
between the Port of Seattle, Delta, and the Debtor.   The Debtor has also failed to
provide documentation regarding a repayment agreement by and between the
Debtor and the IRS regarding the Debtor's tax debt.   Additionally, the Debtor
failed to disclose certain pre-petition transfers to RelateLOOP.[6]

---

6 RelateLOOP is an affiliate of the Debtor because RelateLOOP shares with the Debtor the same
corporate parent: Concept Heaven. Concept Heaven owns 70.74% of the outstanding interests of
the Debtor and 40% of the outstanding interests of RelateLOOP; thus, RelateLOOP meets the
definition of "affiliate" within the meaning of 11 U.S.C. § 101(2)(B). See 11 U.S.C. § 101(2)(B).

16

Moreover, the Debtor made misrepresentations in its Wage Motion.   As previously discussed, the Wage Motion sought authority to pay various individuals set forth therein.   It did not mention the involvement of any entity.   However, the Debtor transferred nearly half of the total amount requested in the Wage Motion to RelateLOOP rather than directly to the individuals.   The Court's Wage Order did not grant the Debtor authority to do so.   Regardless of whether the end result was payment of the individuals, this payment scheme was not disclosed to nor approved by the Court.   Further, Mr. Frisco failed to disclose his involvement in two different bankruptcy cases filed within the last couple of years.   The debtors, Asanda Inc. and Asanda Park Avenue, filed their petitions in the Bankruptcy Court for the Southern District of New York, with Mr. Frisco signing the petitions as the "managing director."

Therefore, the Court finds that the Debtor's failure to comply with the 2004 Order, the lack of unsecured creditors, the case being merely a two party dispute, the Debtor's use of the automatic stay to hinder and delay Delta's attempts to act

---

See also In re Reichmann Petroleum Corp., 364 B.R. 916, 920 (Bankr. E.D. Tex. 2007) ("[T]he Code establishes three basic organizational structures under which related entities shall be considered as 'affiliates.' . . . The third structure reflects a horizontal relationship between a debtor and another entity which share a common parent (or parent-like) entity, which accordingly justifies treating the debtor and its 'sibling entity' as affiliates.").

pursuant to the Agreement, and the Debtor's failure to provide complete

disclosures evidences bad faith, justifying dismissal of the case.

### C.   The Debtor did not Rebut Delta's Showing

Since Delta has shown cause to dismiss the Chapter 11 case, the burden of

proof shifts to the Debtor, who must show "unusual circumstances" that justify the

case continuing in Chapter 11, and show the existence of the three elements

enumerated by § 1112(b)(2).   *See* § 1112(b)(2).   The Debtor has not met this

burden.   The record is absent of any mention of unusual circumstances, the Debtor

asserts none, and the Court finds that none exist.   Therefore, in the absence of any

"specifically identifie[d]" unusual circumstances, the Court need not address the

three requirements of § 1112(b)(2)(A) and (B).

### 2.   Dismissal is Warranted due to Improper Venue

Finally, the Court finds that dismissal of this case is warranted due to

improper venue.   As a general matter, a court cannot retain an improperly

"venued" case.   *In re Houghton Mifflin Harcourt Publ'g Co.,* 474 B.R. 122, 124-

25 (Bankr. S.D.N.Y. 2012).   Venue for bankruptcy cases is addressed by 28

U.S.C. § 1408 (hereinafter the "Bankruptcy Venue Statute"), which provides "that

a bankruptcy case may be filed in the district court within which the debtor's

domicile, residence,[7] principal place of business, or principal assets have been

located for at least the greater portion of the preceding 180 days." 28 U.S.C. §

1408 ; *see A.B. Real Estate v. Bruno's, Inc. (In re Bruno's, Inc.),* 227 B.R. 311, 322

(Bankr. N.D. Ala. 1998) (citing the Bankruptcy Venue Statute). Further, a

bankruptcy case within the Northern District of Georgia is properly venued only if

it is filed in the correct district <u>and</u> division. BLR 1071-1; *Bruno's*, 227 B.R. at

322. Pursuant to 28 U.S.C. § 1406, [t]he district court of a district in which is

filed a case laying venue in the wrong division or district shall dismiss, or if it be in

the interest of justice, transfer such case…" *Id.* Thus, once a determination of

improper venue is made, transfer or dismissal is mandatory. *See, e.g., In re*

*Houghton Mifflin Harcourt Publ'g Co.,* 474 B.R. at 124 ("§ 1406 and its related

caselaw leave the Court with no discretion."). When a case is brought in an

improper venue in bad faith, it should be dismissed. *Palmer v. Dau,* No. 6:10-cv-

248-Orl-19KRS, 2010 U.S. Dist. LEXIS 69329, at *6 (M.D. Fla. July 12, 2010).

As an initial matter, the Court recognizes that Delta addressed all three

venue bases in its pleadings; however, the Debtor only responded to arguments

---

7 Although the statute includes "residence" as the appropriate for determining venue,
"residence" only applies to natural persons and not business entities. *In re Houghton Mifflin*
*Harcourt Publ'g Co.,* 474 B.R. 122, 124-25 (Bankr. S.D.N.Y. 2012).

19

concerning the Debtor's principal place of business.   As a result, the Court accepts

as true Delta's allegations concerning the location of the Debtor's domicile and

principal assets, and finds that the Debtor failed to satisfy these elements of the

Bankruptcy Venue Statute.   *See, e.g., Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466

(7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

Addressing the Debtor's principal place of business, the Court finds that the

Debtor has failed to satisfy this element of the Bankruptcy Venue Statute.

Principal place of business refers to the "nerve center" - the "place where a

corporation's officers direct, control, and coordinate the corporation's activities."

*Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010); *see also, e.g., In re DDMD*

*Trucking, Inc.,* No. 14-12511- ta11, 2015 Bankr. LEXIS 257, at *7 (Bankr. D.N.M.

Jan. 28, 2015) (applying Hertz to the Bankruptcy Venue Statute).   Here, the

Debtor's Petition lists the PTC Address as the Debtor's principal place of business.

However, the Court finds that the record indicates that everything pertaining to the

Debtor's business centers around New York: Mr. Frisco resides in New York; the

Debtor's Bookkeeper, Mr. Cassar, resides in New York; the Debtor leases office

space in New York; and substantially all of the Debtor's financial and government

documents list a New York address – including bank accounts, tax returns,

20

insurance documents.   In fact, the only documents that use the PTC Address are the Debtor's Petition and the Articles of Merger through which the Debtor became an LLC organized under the laws of the State of Georgia, which occurred on January 3, 2019.

Further, on March 28, 2019, the Debtor filed a notice of change of address with the Court, changing its address to 245 8th Ave., New York, New York. (Doc. 36).   In addition, on April 15, 2019, after the Initial Hearing during which Delta raised its arguments concerning improper venue and prior to the Final Hearing, the Debtor amended its Petition to change its principal place of business from the PTC Address to the address of the ATL Sky Club, which is in Fulton County, Georgia.   (Doc. 58).   This change results in this Court's not being the proper venue for this case, as Fulton County is not within the Newnan Division.[8]

The Court is not persuaded by Mr. Frisco's testimony concerning the PTC Address.   Mr. Frisco testified that he was located at the PTC Address for most of 2018, and during that time he conducted business from the PTC Address. However, Mr. Frisco's cross examination at the Final Hearing revealed that the

---

[8] As an aside, the Court notes that the Debtor's changing of its principal place of business was done without any request for permission from this Court.   Such a significant change is certainly outside the ordinary course of a debtor's business, and such action is further evidence of the Debtor's bad faith and failure to satisfy bankruptcy's requirement of complete transparency.

most common activity he performed at the PTC Address was sleeping, due to his leaving the location early in the morning to go to the ATL Sky Club and returning to the PTC Address late at night.   Further, Mr. Frisco admitted that he merely had a personal computer at this location, his cellphone, no landline for the Debtor's business, no computer server for the Debtor's business, and no actual office beyond a spare bedroom in the PTC Address.   Furthermore, the Debtor did not have the permission of Ms. Connors, who owns the residence located at the PTC Address, to use the PTC Address on its Petition or list it as the Debtor's principal place of business.

Ultimately, the Court sees the PTC Address as nothing more than the location at which Mr. Frisco chose to stay when visiting the ATL Sky Club and that he occasionally worked from when away from the ATL Sky Club.   This does not satisfy the definition of "nerve center."   The Debtor's changing of its principal place of business to the Fulton County location strengthens the Court's ruling.

Given that the Debtor's venue selection is improper, the case must either be dismissed or transferred.   *See Houghton Mifflin,* 474 B.R. at 124.   Considering the Court's findings of bad faith set forth above, the Court concludes that dismissal of the instant Chapter 11 case is the appropriate course of action.

22

3.   Relief Pursuant to § 362, and Assumption and Termination Pursuant to § 365

Since the Court finds that dismissal of the case is warranted pursuant to § 1112(b) and the Bankruptcy Venue Statute, the Court need not discuss Delta's request for relief pursuant to § 362 or § 365.

## Conclusion

In accordance with the foregoing, Delta's Motion to Dismiss is hereby **GRANTED**.  The Clerk is **DIRECTED** to serve a copy of this Order on Delta, Delta's counsel, Debtor, Debtor's counsel, the United States Trustee, and all parties in interest.

## END OF DOCUMENT